FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 JUL 31 AM 11: 55
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

T.T.M., )
by Next Friend, LILLIE MINCEY, )
)
    Plaintiff, )
)
v. ) CV 312-050
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security )
Administration,[1] )
)
    Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Lillie Mincey ("Plaintiff"), proceeding on behalf of her daughter, T.T.M., ("Claimant"), appeals the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I.    BACKGROUND

Plaintiff protectively applied for SSI on behalf of Claimant on August 4, 2009, alleging a disability onset date of January 1, 2002. Tr. ("R"), p. 202. The Social Security

---

[1] The Court takes judicial notice that on February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Accordingly, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Carolyn W. Colvin as Defendant in this case. Nevertheless, for ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

Administration denied Plaintiff's applications initially, R. 78-81, and on reconsideration, R. 85-88. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on April 15, 2011. R. 36-75. At the hearing, the ALJ heard testimony from Plaintiff and Claimant, who were represented by an attorney. Id. On May 20, 2011, the ALJ issued an unfavorable decision. R. 16-35.

Applying the three-step sequential process required by 20 C.F.R. § 416.924(a), the ALJ found:

1. The claimant has not engaged in substantial gainful activity since August 4, 2009, the application date (20 C.F.R. § 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: borderline intellectual functioning and asthma (20 C.F.R. § 416.924(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925, and 416.926). The claimant does not have an impairment or combination of impairments that functionally equals the listings (20 C.F.R. §§ 416.924(d) & 416.926(a)). Thus, the claimant has not been under a disability, as defined by the Social Security Act, from August 4, 2009, through May 20, 2011 (20 C.F.R. § 416.924(a)).[2]

R. 22-31.

When the Appeals Council denied Plaintiff's request for review on April 30, 2012, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal of the adverse decision,

---

[2]While Claimant's alleged onset date was January 1, 2002, SSI benefits cannot be paid until the month after an application is filed and all other requirements for eligibility are met. 20 C.F.R. § 416.335. As Plaintiff filed the application on behalf of Claimant on August 4, 2009, the relevant time period under consideration began, at the earliest, in August of 2009. See Manzo v. Comm'r of Soc. Sec., 408 F. App'x 265, 267 n.2 (11th Cir. 2011) (*per curiam*).

contending that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in finding that Claimant did not meet Listings 112.05(C) or (D) of the Listings of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1. (See doc. no. 15 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff SSI benefits was supported by substantial evidence and should be affirmed. (See doc. no. 18 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds

3

substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff contends that the ALJ erred by not finding that Claimant meets Listings 112.05(C) or (D) because (1) she has a valid verbal, performance, or full scale IQ score of less than 70 based on IQ tests administered by Peggy Lawrence, Ed.S., in December 2007, and (2) R. Frederick Boedy, M.D., a treating physician, diagnosed Claimant as mentally retarded. See Pl.'s Br., pp. 15-21. The Commissioner, on the other hand, contends that substantial evidence in the record supports the ALJ's findings that Claimant does not meet Listings 112.05(C) or (D) because (1) the evidence does not demonstrate that she has a valid verbal, performance, or full scale IQ of less than 70 and (2) the ALJ articulated good cause for rejecting Dr. Boedy's opinions. See Comm'r's Br., pp. 12-15. For the reasons set forth below, the Court agrees with the Commissioner that substantial evidence in the record supports the ALJ's findings that

4

Claimant does not meet Listings 112.05(C) or (D).

### A. The Three-Step Sequential Process to Evaluate Disability in Children

A three-step sequential process is used to determine whether a child is disabled. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the claimant is engaging in substantial gainful activity; if so, the claim is denied. Id. § 416.924(b). At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if the claimant does not have any severe impairments, the claim is denied. Id. § 416.924(c). At the third and final step, the Commissioner must determine whether the claimant's impairments meet, medically equal, or functionally equal the Listings. Id. § 416.924(d). If the claimant does not have an impairment that meets, medically equals, or functionally equals the Listings, she will not be found disabled. Id. § 416.924(d)(2).

"A child's limitations 'meet' the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment." Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1279 (11th Cir. 2004). Moreover, the claimant bears the burden of presenting specific medical findings to show she meets a Listing. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). Finally, in order to show that her impairment meets a Listing, a claimant needs to meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

With respect to the Listings in 112.05, the claimant must show "significantly subaverage general intellectual functioning with deficits in adaptive functioning." 20 C.F.R. pt. 404, subpt. P, app. 1. 112.05; see also Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012) (*per curiam*) ("As both the Listings and our cases make plain,

5

a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05 or 112.05."). Specifically, for Listing 112.05(C), the claimant must show "[a] valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. pt. 404, subpt. P, app. 1. 112.05. For Listing 112.05(D), on the other hand, the claimant must show a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function. Id.; Gray ex rel. Whymss v. Comm'r of Soc. Sec., 454 F. App'x 748, 750 (11th Cir. 2011) (*per curiam*).

### B. Substantial Evidence Supports ALJ's Finding that Claimant's IQ Scores Were Not Conclusive

In support of her argument Plaintiff points to Claimant's Stanford-Binet Intelligence Test administered by Dr. Lawrence on December 11, 2007, the results of which were a verbal IQ of 59 and a full scale IQ of 62.[3] Pl.'s Br., p. 19. The ALJ found, however, that Claimant's intelligence testing, which showed composite scores ranging from 62 to 83 in two sets of testing administered in 2004 and 2007, was "so widely varied that it is impossible to classify her as mentally retarded." R. 24 (citing R. 370-73).

Plaintiff primarily contends that the "Regulations contemplate different IQ scores within a particular test and direct the use of the lowest score." Pl.'s Br., p. 18. Plaintiff is correct that "[i]n cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler

---

[3]Plaintiff also emphasizes that Claimant received a score of 66 on the Verbal Intelligence component of the Reynolds Intellectual Assessment, and scored in the first percentile on the reading portions of the Wide Range Achievement Test-3 and the Weschler Individiual Achievment Test-II. Pl.'s Br., pp. 19-20.

6

series, the lowest of these is used in conjunction with listing 112.05." 20 C.F.R. pt. 404, subpt. P, app. 1. 112.05; see also Ambers v. Heckler, 736 F.2d 1467, 1470 (11th Cir. 1984) (explaining same principle for Listings under 12.00). "But the 'lowest score' rule does not address which IQ score an ALJ should rely upon when multiple sets of tests have been administered." Wilbon v. Comm'r of Soc. Sec., 181 F. App'x 826, 829 (11th Cir. 2006) (*per curiam*). The court in Wilbon specifically rejected the plaintiff's contention in that case "that the lowest score must be used" and concluded that an ALJ did not err in considering "multiple IQ scores generated by different test administrations" when determining the IQ score for purposes of the Listings. Id. at 828-29.

Indeed, while Claimant's Verbal Intelligence and Composite Intelligence scores on the Reynolds Intellectual Assessment Scales ("RIAS") were 66 and 72 respectively in 2007, those scores had been 77 and 83 when the same test was administered on October 27, 2004.[4] R. 175-79, 370-71. Moreover, while Claimant scored a 59 Verbal IQ on the Stanford-Binet Intelligence Scale and a 66 on the Verbal Intelligence component of the RIAS in 2007, she also scored an 87 on the Verbal component of the Kaufman Brief Intelligence Test-2 ("K-BIT-2") administered the same day, which placed her within the "low average range of intellectual ability" for that test. R. 371.

Dr. Lawrence concluded that Claimant's varied scores fell "within the disabled to low average range of intellectual ability and the borderline range of adaptive behavior." R. 373. She discounted the value of the test scores at issue, however, commenting that Claimant's "low verbal scores reflect her area of disability and are not considered a true measure of her potential

---

[4] The October 27, 2004 intelligence tests were administered by Lorraine McDilda, Ph.D. R. 175-79.

7

ability" and that Claimant's "inconsistent performance from one intellectual assessment to another is often seen in students with attention problems." R. 373-74. Dr. Lawrence added that Claimant's "chronic allergies also may contribute to her erratic and inconsistent test results." R. 374.

In addition to the significant inconsistencies between Claimant's various IQ scores, the ALJ also noted that Claimant achieved "average" grades in school and "near average" scores on standardized tests.[5] R. 26, 307, 314, 317-43. Accordingly, there is ample support for the ALJ's decision to reject any of Claimant's IQ scores as conclusive, including the Stanford-Binet IQ scores urged by Plaintiff. See Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) ("[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.") (citing Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986)); see also Goodley ex rel. Goodley v. Apfel, CIV. A. 99-0122-BH-L, 2000 WL 718814, at *5 (S.D. Ala. May 15, 2000) (ALJ properly discounted 1993 test result showing Performance IQ of 70 based on claimant's 1997 IQ scores, which were all above 70, as well as school records and other evidence).

---

[5]Plaintiff challenges the ALJ's reliance on Claimant's performance in special education classes, arguing, without citation to any authority, that "[o]ne cannot equate performance in special education classes with performance in general education classes." Pl.'s Br., p. 20. To the contrary, however, an ALJ may properly rely upon a claimant's performance in special education classes for purposes of determining whether the claimant meets the relevant Listings for mental retardation. See Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (per curiam) (substantial evidence supported ALJ's decision that claimant did not meet Listing 12.05(C) where he found that claimant, inter alia, "did well in special education classes"); see also Good v. Astrue, 3:11-CV-384-J-JRK, 2012 WL 3893550, at *5 (M.D. Fla. Sept. 7, 2012) (substantial evidence supported ALJ's decision to assign little weight to claimant's IQ scores where, inter alia, he had completed twelve years of schooling in special education classes).

### C. Substantial Evidence Supports ALJ's Decision to Assign Limited Weight to Opinions of Dr. Boedy

Plaintiff also challenges the ALJ's assignment of limited weight to the opinions of Dr. Boedy, who diagnosed Plaintiff as mentally retarded after two evaluations in October of 2009 and February of 2010. See Pl.'s Br., pp. 7-8, 18-20. Specifically, Plaintiff contends that the ALJ did not afford Dr. Boedy's opinions the proper weight due to those of a treating physician. Id. at 18-20. As Dr. Boedy did not administer an IQ test, and as Plaintiff's sole contention of error is that the ALJ should have found that Claimant met Listing 112.05(C) or (D), Plaintiff appears to contend that the ALJ should have given great weight to Dr. Boedy's opinions in order to find that Claimant had a valid IQ score below 70. See id. at 20. The Court agrees with the Commissioner, however, that the ALJ's decision to reject Dr. Boedy's opinions is supported by substantial evidence. See Comm'r's Br., pp. 14-15.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight.[6] Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). Generally, the Commissioner commits reversible error by failing to specify what weight is given to a treating physician's opinion and the reason for giving it no weight. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159

---

[6]The Court will assume *arguendo* that Dr. Boedy was a treating physician. See Gainous v. Astrue, 402 F. App'x 472, 474 n.2 (11th Cir. 2010) (*per curiam*) (assuming that doctor who treated claimant on only two occasions was a "treating physician," despite Commissioner's contention that doctor had not obtained a "longitudinal picture"of claimant so as to be due controlling weight as a treating source); cf. Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (declining to find that "treating physician" rule applies to physician who only saw claimant once).

(11th Cir. 2004) (*per curiam*) (ruling that ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same). Still, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991).

Dr. Boedy examined Claimant twice, on October 1, 2009 and February 25, 2010. R. 395-96. On October 1, 2009, Dr. Boedy opined, based on his review of unspecified tests provided to him by her mother, that Claimant "demonstrated mild mentally (sic) retardation range to low intelligence." R. 396. Dr. Boedy also noted Plaintiff's report of "diminished movement" during her pregnancy and Claimant's family history of mental retardation. Id. Dr. Boedy additionally observed that Claimant "did know her own birth date," but that she "had a hard time with right/left orientation," was "completely silent" except "when asked specific questions and then tried to answer only with a head nod," and "was remarkably, physically, and verbally, reticent." Id. Dr. Boedy's working diagnosis was mental retardation. Id.

After a return visit on February 25, 2010, Dr. Boedy's impression was mental retardation with autistic features based on information provided to him by a speech pathologist,

10

Terri C. Dixon, Ph.D.[7] R. 395. Dr. Boedy noted based on a "behavioral autopsy so to speak" that Claimant had a "long history of rocking, spinning and head banging and stereotypical behaviors," and he opined that Claimant had "autistic features." Id. On the same day, Dr. Boedy wrote a letter to Claimant's school system in which he noted his initial working diagnosis of mental retardation was based on the "history given of diminished movement throughout the pregnancy," as well as Claimant's "school documents." R. 394. Dr. Boedy commented that Claimant had a "profound family history of mental retardation going through the mother's side which cannot be ignored," and which "just enhances our suspicions." Id. Dr. Boedy's overall recommendation in the letter was that Claimant's education move toward life skills and later on vocational training. Id.

Plaintiff contends that the ALJ erred in failing to afford controlling weight to Dr. Boedy's opinions, namely his diagnosis of Claimant as mentally retarded. Pl.'s Br., pp. 18-20. Specifically, she contends that the ALJ gave little weight to Dr. Boedy's opinions, "apparently, because his 'report was submitted by the claimant,'" and that the ALJ "does not provide any other basis for not providing significant weight to the opinion of Dr. Boedy." Pl.'s Br., p. 18 (citing R. 24). To the contrary, however, the ALJ clearly stated that he afforded little weight to Dr. Boedy's opinions diagnosing Claimant as mentally retarded because the diagnosis was "not supported by testing" and the "medical and school evidence of record simply does not support this diagnosis." R. 24. The ALJ also observed that the diagnosis appeared to come

---

[7] In a "Speech and Language Evaluation" on November 19, 2009, Dr. Dixon concluded that Claimant demonstrated "severely delayed receptive and profoundly delayed expressive language development," but that her "[v]oice was found to be within normal limits. Resonance is unremarkable. Fluency is appropriate. Articulatory development is age appropriate and intact, resulting in adequate intelligibility of speech production." R. 382-83. Dr. Boedy noted that Dr. Dixon's report "confirms what I thought along with the school evaluation." R. 396.

11

"primarily from the fact that [Claimant] has several relatives her mother [Plaintiff] noted as mentally retarded." Id.

Plaintiff disputes the ALJ's finding that Dr. Boedy's diagnosis was not supported by testing, as Dr. Boedy stated that "he reviewed all test results which demonstrate mild mental retardation." Pl.'s Br., pp. 18-19. Dr. Boedy did not administer any intelligence tests, however, nor did he specify which tests he reviewed in making his diagnosis. See R. 396. Moreover, as the Commissioner points out, Dr. Boedy's diagnosis is not supported by the findings of Dr. McDilda or Dr. Lawrence, who actually administered a series of intelligence tests to Claimant in 2004 and 2007, respectively. Rather, Dr. McDilda concluded that Claimant "appear[ed] to be functioning within the upper end of the low average range of intelligence overall." R. 17. Dr. Lawrence observed that Claimant's intelligence test scores fell within the "disabled to low average range of intellectual ability," but, as discussed supra, see Part III.B, she discounted the value of the scores by noting that Claimant's "low verbal scores reflect her area of disability and are not considered a true measure of her potential ability" and that the "varied" test results may have been a result of Claimant's "attention problems" or "chronic allergies." R. 373-74. Accordingly, substantial evidence supports the ALJ's finding that Dr. Boedy's diagnosis of mental retardation was unsupported by – i.e., inconsistent with – the testing that had been administered.

Similarly, as discussed supra, see Part III.B, the ALJ also noted that Claimant achieved "average" grades in school and "near average" scores on standardized tests, showing that she was "learning disabled" rather than "mentally retarded." R. 26, 307, 314, 317-43. Substantial evidence thus likewise supports the ALJ's finding that Dr. Boedy's diagnosis of mental retardation was bereft of support from Claimant's school records. Therefore, the ALJ properly

articulated good cause to discount Dr. Boedy's opinions as inconsistent with other evidence of record. See Lewis, 125 F.3d at 1440; Sryock, 764 F.2d at 835. Plaintiff's assignment of error to the ALJ with respect to Dr. Boedy's opinions is accordingly without merit.

In sum, substantial evidence in the record supports the ALJ's findings that Claimant does not meet Listings 112.05(C) or (D), and Plaintiff's contention that the ALJ erred in concluding that Claimant did not meet either listing is without merit.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 31st day of July, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE